FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

MAR 11 2013

JAMES W. McCORMACK, CLERK
By:_____
                      DEP CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

**GLOBAL RISK INTERMEDIARY, LLC**                                    **PLAINTIFF**

Case No. 4:13cv0133 JLH

**AETNA GLOBAL BENEFITS LIMITED;**                                   **DEFENDANT**
**AETNA LIFE INSURANCE COMPANY;**
**AETNA LIFE & CASUALTY (BERMUDA), LTD.**

**COMPLAINT**  This case assigned to District Judge _____
                              and to Magistrate Judge _____

COMES NOW the Plaintiff, Global Risk Intermediary, LLC ("GRI"), and for its

Complaint states the following:

### NATURE OF ACTION

1.      This is an action for damages for breach of contract, breach of the implied duty of

good faith and fair dealing, and damage to business reputation.

### PARTIES

2.      GRI is a limited liability company organized under the laws of the State of Florida

with its principal place of business located in Little Rock, Pulaski County, Arkansas.  Its sole

member, Yasmine Mathieu, resides in Little Rock, Pulaski County, Arkansas and is a citizen of

the State of Arkansas.

3.      Aetna Global Benefits Limited ("AGB") is a corporation organized under the

laws of the State of Delaware with its principal place of business located in Hartford,

Connecticut.  AGB is an alter-ego subsidiary of Aetna Life Insurance Company.

4.      Aetna Life & Casualty (Bermuda), Limited ("ALCB") is a corporation organized

under the laws of the State of Delaware with its principal place of business located in Hartford,

Connecticut.  ALCB is an alter-ego subsidiary of Aetna Life Insurance Company.

5.      Aetna Life Insurance Company is a corporation organized under the laws of the State of Delaware with its principal place of business located in Hartford, Connecticut.  Aetna Life Insurance Company is registered to do business in the State of Arkansas and has an office in Little Rock, Arkansas.

6.      For purposes of this Complaint, unless otherwise specifically stated, AGB, ALCB and Aetna Life Insurance Company shall be referred to collectively as "Aetna."

JURISDICTION AND VENUE

7.      GRI has incurred damages, expenses and costs for breach of contract, breach of implied duty of good faith and fair dealing, and damage to business reputation in excess of $1,000,000 and has made demand for payment of same.

8.      This Court has jurisdiction over the subject matter pursuant to 28 U.S.C. § 2201 and 28 U.S.C. § 1332(c)(1).

9.      The Court has personal jurisdiction over the parties and venue is proper here because the events giving rise to the claims herein occurred in Little Rock, Pulaski County, Arkansas and the defendants are subject to personal jurisdiction in the State of Arkansas.

FACTUAL BACKGROUND

10.     GRI is a reinsurance broker and reinsurance intermediary whose primary business is obtaining reinsurance quotations, negotiating insurance placements, providing servicing and renewals of reinsurance programs and treaties on behalf of insurance companies, and providing claim recovery services.

11.     Aetna is one of the nation's largest insurers in the fields of health care, dental, pharmacy, group life and disability, and employee benefits.

12.     Aetna Life Insurance Company, by and through affiliates and subsidiaries such as AGB and ALCB, also issues policies involving groups of insured persons for group life, accidental death and dismemberment, as well as long term disabilities, payable as a result of war, but that also include coverage for accidental death and dismemberment as a result of insurrections, internment, riots, rebellions, civil commotions and explosions of war weapons, or terrorist activities ("War Risk Policies" hereinafter).

13.     In order to protect against potential losses, and for other purported business purposes, Aetna has had the long standing practice of obtaining reinsurance for certain of its War Risk Policies.

14.     The primary market for obtaining reinsurance for War Risk Policies is the Lloyds of London market.

15.     In order to access the Lloyds of London reinsurance market, it is both advisable and necessary for Aetna to engage brokers with access to such markets in order to obtain reinsurance quotations, placements, services and renewals of reinsurance programs and treaties. Such a broker is commonly referred to in the insurance industry as a "Reinsurance Intermediary."

16.     Among other things, GRI has placed reinsurance for Aetna on both the direct and international accounts for over twenty years and from time to time works with corresponding sub-brokers to access various foreign markets and syndicates as a Reinsurance Intermediary.

17.     In late 2009, representatives of Aetna negotiated with representatives of GRI to engage GRI to act on Aetna's behalf as a Reinsurance Intermediary.

18.     The negotiations between GRI and Aetna took place via electronic mail and telephonically.

19.     On or about December 1, 2009, GRI and Aetna Life Insurance Company entered into the agreement attached hereto as **Exhibit A** ("Broker Authorization Agreement").   The Broker Authorization Agreement was accepted and performed by GRI at its home office in Arkansas.

20.     Pursuant to the Broker Authorization Agreement, GRI placed five (5) reinsurance contracts on behalf of Aetna.   Four (4) of said contracts had one (1) year terms; a fifth contract had a two (2) year term.   These contracts shall be referred to collectively herein as "the Aetna Reinsurance Contracts."

21.     One of the five Aetna Reinsurance Contracts relates to a policy issued by AGB with Service Employees International, Inc. ("SEII"), a division of Halliburton Corporation.   The SEII contract has a two year term that commenced on January 1, 2010 at 12:01 a.m. EST ("SEII Contract").

22.     During the negotiations for the placement of the Aetna reinsurance coverage for the SEII Contract, AEB Aetna demanded a rate reduction.   Through the efforts and actions of GRI, which included terms favorable to Aetna including a reduction in GRI's brokerage and an agreement by the underwriter to accept a two (2) year contract term, a substantial rate reduction was also procured of behalf of Aetna.   After the negotiations were complete the Aetna Reinsurance was placed with approval of Aetna, who accepted the benefits of a reduced cost due to GRI's reduction in brokerage and the extended two (2) year contract term.

23.     Following the procurement of the Aetna Reinsurance Contracts, GRI's ongoing responsibilities were only ministerial in nature.   As such, all commissions and brokerage due GRI were earned at the time such contracts were procured.

24.     The clear language of the Broker Authorization Agreement provides that if Aetna cancels the Broker Authorization Agreement, GRI is entitled to be fully compensated by Aetna for all commissions and brokerage due GRI under the Aetna Reinsurance Contracts.

25.     On or about August 31st of 2010, GRI learned from the reinsurers that a competing reinsurance broker had presented a letter, signed by representatives of Aetna, designating Guy Carpenter & Company, Limited and Guy Carpenter & Company, LLC ("Guy Carpenter" collectively) as the broker of record for the Aetna Reinsurance Contracts.   ("Broker of Record Letter.")  A true and correct copy of the Broker of Record letter is attached hereto as **Exhibit B**.   According to the Broker of Record Letter, the Aetna appointment was to become effective December 31, 2010.

26.     The Broker of Record Letter had the effect of terminating the Broker Authorization Agreement and re-allocating the accounts to Guy Carpenter.

27.     At the time that Aetna appointed Guy Carpenter, thereby wrongfully terminating the Broker Authorization Agreement with GRI, Aetna had accepted the benefits of the Broker Authorization Agreement and GRI had fulfilled, or substantially performed, all of its obligations under the Broker Authorization Agreement.   As such, all sums due GRI under the Broker Authorization Agreement were due and payable as of August 31, 2010.

28.     It is standard operating procedure in the reinsurance industry that before terminating a broker of record and to the markets being advised that the broker had been terminated, the broker is given notice so that the broker can properly transition the accounts being handled.  Typically such a transition includes handling of continuing obligations in the processing of the premiums and other ministerial functions commonly known as "run-off."  It is typical that the coordination for the run-off, and the handling of compensation for this period, is

accomplished cooperatively between the former broker of record and the newly appointed broker of record.

29.     Aetna gave GRI no prior notice that it would be issuing the Broker of Record Letter, nor did it give GRI any advance notice or opportunity to contact the markets to advise of the change prior to the issuance of the Broker of Record Letter.  Such actions were a violation of widespread standard industry practices and served no legitimate business purpose of Aetna.

30.     Shortly before the termination of GRI representatives of Aetna had inquired of GRI regarding future deals and never gave any indication that GRI had done anything wrong or that GRI was not performing satisfactorily.  Despite this, Aetna's termination was done in such manner as to give GRI no ability to protect its business reputation and had the effect of creating the impression that GRI had been terminated for wrongdoing.

31.     By terminating the Broker Authorization Agreement in such a public manner, and causing the termination letter to be published to the markets in a method and manner at odds with accepted industry practices, Aetna created the false impression that Aetna terminated GRI on the basis of wrongdoing.

32.     At the time of the termination of GRI by Aetna, the Aetna Reinsurance Contracts continued and were serviced by the new broker that was allocated the business.

33.     As recently as December 2012, GRI continued to provide services at the request of Aetna and pursuant to the Broker Authorization Agreement.

34.     Prior to Aetna terminating the Broker Authorization Agreement, GRI enjoyed a exemplary reputation in the Aetna Reinsurance business.

35.     As a result of Aetna's actions outlined herein, and as will be more fully developed at trial, GRI suffered harm to its business reputation.

36.     Upon termination of the Broker Authorization Agreement by Aetna, Aetna became liable for all brokerage fees and commissions due GRI as a result of procuring the Aetna Reinsurance Contracts.

37.     At the time that the Broker of Record Letter was issued, all of the Aetna Reinsurance Contracts were active.

38.     At the time that the Broker of Record Letter was issued in August 2010, as of December 31, 2011, the effective date of the Broker of Record Letter, only one of the Aetna Reinsurance Contracts, the SEII Policy, was to remain active given that said policy had a term of two (2) years.

39.     By letter dated September 20, 2010, Aetna advised that it would terminate the SEII Policy at the end of 2010.  Attached hereto as **Exhibit C,** is a true and correct copy of a letter from Donna Otten, authorized representative of Aetna, dated September 20, 2010.

40.     The unilateral actions of Aetna in terminating the Broker Authorization Agreement gave rise to its obligation to pay all brokerage and income due to GRI under the agreement pertaining to the Aetna Reinsurance Contracts until the natural expiration of the Aetna Reinsurance Contracts.

41.     GRI has made a demand to Aetna for payment of all sums due but Aetna has failed or refused to make payment.

42.     At all times relevant to the allegations and claims made herein, AGB, ALCB and Aetna Life Insurance Company acted in concert with regard to their dealings with GRI and mutually benefited from the services rendered by GRI that are the subject matter of this lawsuit.

COUNT I: BREACH OF CONTRACT

43.     GRI incorporates by reference here each and every allegation set forth above as if set forth word for word.

44.     Pursuant to the Broker Authorization Agreement, in the event the agreement was terminated by Aetna, Aetna had a duty to pay all sums due under the agreement to GRI.

45.     Aetna failed to honor and fulfill its obligations under the Broker Authorization Agreement.

46.     GRI has fulfilled all of its obligations under the Broker Authorization Agreement.

47.     As a proximate cause of Aetna's failure to perform its obligations under the Broker Authorization Agreement, GRI incurred damages for breach of contract in an amount to be proven at trial excess of $100,000.

COUNT II: BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

48.     GRI incorporates by reference here each and every allegation set forth above as if set forth word for word.

49.     Under settled Arkansas law, implied in all contracts is a duty of good faith and fair dealing.

50.     The method and manner that Aetna chose in terminating the Broker Authorization Agreement violated established insurance industry practices and served no business purpose to Aetna.

51.     The method and manner that Aetna chose in terminating the Broker Authorization Agreement was wrongful and done with the intent to do harm to GRI in the marketplace.

52.     As a proximate cause of Aetna's failure to act in good faith and failure to deal fairly with GRI in the performance of Aetna's obligations under the Broker Authorization

Agreement, GRI incurred damages for breach of the implied duty of good faith and fair dealing in an amount to be proven at trial excess of $100,000.

## COUNT III: DAMAGE TO BUSINESS REPUTATION

53.     GRI incorporates by reference here each and every allegation set forth above as if set forth word for word.

54.     The method and manner that Aetna chose in terminating the Broker Authorization Agreement violated established insurance industry practices, served no business purpose to Aetna, and created the false impression that the Broker Authorization Agreement was terminated based upon wrongdoing by GRI.

55.     The method and manner that Aetna chose in terminating the Broker Authorization Agreement was wrongful and done with the intent to do harm to GRI in the marketplace.

56.     As a proximate cause of Aetna's actions outlined herein and to be more fully proven at trial, GRI incurred damages for harm to its business reputation for, among other things, lost profits and lost future income, in an amount to be proven at trial excess of $100,000.

## DEMAND FOR JURY TRIAL

57.     GRI hereby demands a trial by jury on all issues.

WHEREFORE, Plaintiff, Global Risk Intermediary, LLC, prays for the following relief:

(a)     A judgment in its favor and against the Defendants, jointly and severally, for actual damages for breach of contract, including but not limited to pre and post judgment interest at the maximum allowable rate, in an amount to be proven at trial in excess of $100,000, exclusive of fees, costs, and pre and post judgment interest;

(b)     A judgment in its favor and against the Defendants, jointly and severally, for breach of the implied duty of good faith and fair dealing, including but not limited to pre and post judgment interest at the maximum allowable rate, in an amount to be proven at trial in excess of $100,000, exclusive of fees, costs, and pre and post judgment interest;

(c)     A judgment in its favor and against the Defendants, jointly and severally, for actual damages for damage to business reputation,  including but not limited to pre and post judgment interest at the maximum allowable rate, in an amount to be proven at trial in excess of $100,000, exclusive of fees, costs, and pre and post judgment interest;

(d)     A judgment in its favor and against the Defendants, jointly and severally, for GRI's attorney's fees and costs;

(e)     For all other just and proper relief to which Plaintiff may be entitled.


Respectfully submitted,

CATLETT LAW FIRM, PLC
*Attorneys for Global Risk Intermediary, LLC*


By:    _____
          S. Graham Catlett, ABA 77-029
          gcatlett@catlaw.com
          Christian C. Michaels, ABA 98-013
          cmichaels@catlaw.com
          323 Center Street, 18th Floor
          Little Rock, Arkansas  72201
          Phone (501) 372-2121
          Fax (501) 372-5566

Broker Authorization Agreement

This agreement relates to the Reinsurance Broking of Aetna Global Benefits (client) as part of Aetna Life Insurance Company and Global Risk Intermediary, LLC (G.R.I.), defined as the Reinsurance broker.

The Broker, Global Risk Intermediary shall obtain Reinsurance quotations, place, service and renew the Reinsurance programs/ Treaties currently placed by Global Risk Intermediary on behalf of Aetna. Global Risk Intermediary may for time-to-time work with a corresponding or sub-broker required to access various Lloyds syndicates and foreign markets. These sub producers are the responsibility of Global Risk and will be compensated by Global Risk. Those sub-producers shall be under the complete duty of confidentiality as to any placements and information/data provided to them for the securitization of reinsurance quotes, proposals, and placements. Global Risk Intermediary will request the files and information be returned to Global Risk if they no-longer utilize the sub-producers or capacity of a market.

Global Risk Intermediary is recognized as the Reinsurance Intermediary on the quotes, placements and renewals placed and secured by Global Risk. All communications between the Reinsured (Aetna) and the Reinsurers shall be made thru Global Risk Intermediary.

As the reinsurance Broker, GRI is obligated to:

    To obtain relevant insurance quotations from the markets.

    To give necessary advice and information on the terms and protection being offered and the choice of Reinsurance options.

    To ensure that industry best practices are being adhered to.

    To ensure that any and all information from the client, of a significant nature relating to the reinsurance coverage.

    To arrange for all and relevant information from Reinsurer to be passed on to the client without delay.

    To service the placement to the natural expiration date of the risk unless this contract is terminated

    To assist in memorializing the agreement upon receipt of terms and obtain the execution of the same.

In addition to procuring reinsurance, negotiating and drafting Reinsurance wordings and contract language GRI will ensure the best reinsurance terms and conditions are secured



EXHIBIT

A

for Aetna and is deemed to have a "duty of good faith" to each party in the reinsurance relationship while securing the Aetna's desired placement.

G.R.I serves in a fiduciary capacity with respects to the premium held for either party. and has continuing duties to transmit accounts, collect balances due, settle losses and perform other aspect of administration.
Funds received by Global Risk Intermediaries from Aetna are deemed paid to the Reinsurers. However, funds received from Reinsurers are deemed received by Aetna only to the extent it is actually received by Aetna. Payments for Global Risk Intermediary services are the responsibility of the Reinsurer(s) that the program is ultimately place with. Global Risk Intermediary will be paid for the accounts until the natural expiration date of the account (s) reinsured or unless the account is terminated with Aetna.

This agreement will supersede previous agreements, except for specific confidentiality agreements on prospective accounts. This agreement will also cover current prospects and new request by Aetna to Global Risk Intermediary. "Request" can be defined by contact made via phone request, emails and messaging.

This agreement can be terminated by either party with 60 day notice of cancellation in writing. Global Risk Intermediary has the right to brokerage for the accounts that have reinsurance placed and to be fully compensated for all commissions/brokerage due until the underlying account reinsurance if this agreement is terminated or the reinsurance portfolio is transferred.

Global Risk Intermediary will carry forth it duties with utmost professionalism, care and loyalty to Aetna and may refuse to place reinsurance for a direct competitor to Aetna. This is the decision of Global Risk Intermediary and not solicited by Aetna.

12/1/09

Aetna Life Insurance Company

By: _____

Title: _ASST VICE PRESIDENT_

Global Risk Intermediary

By: _____

Title: _____

12/1/09

AUG 31 '10 14:40 FR AETNA DENTAL          TO 918607541594      P.01/02

 **Aetna**®

Dana M. Benbow
Head of Underwriting,
Product & Sales Support
Telephone: 973-244-3868
Fax Number: 973-244-3746

August 31, 2010

Mr. John Galbraith
Mr. Jeff Babino
Guy Carpenter & Company, LLC
44 Whippany Road
Morristown, NJ 07962

RE:    **Aetna – War Risk and PTD/TTD Facultative and Treaty Programs Broker of Record Authorization**

Dear John & Jeff:

This letter will serve as our appointment of Guy Carpenter & Company, LLC's designation as Broker of Record for the representation of Aetna Global Benefits Limited and Aetna Life & Casualty (Bermuda) Limited for specific facultative and treaty placements effective January 1, 2011 outlined in the attached Schedule of Placements.

The authority granted under this appointment of broker of record will terminate at such time as an authorized officer of Aetna Global Benefits Limited and Aetna (Bermuda) Limited gives written notice of such termination to Guy Carpenter & Company, LLC.

This letter also constitutes your authority to furnish the representatives of Guy Carpenter & Company, LLC or Guy Carpenter & Company Ltd. with all the information they request regarding our existing insurance/reinsurance contracts, schedules, worksheets or other data.

This appointment of broker of record supersedes any similar authority previously granted to any other party or parties concerning the reinsurance described herein.

Should you have any questions regarding the foregoing, please feel free to contact me at your convenience.

Sincerely,

Dana M. Benbow



EXHIBIT

B

 **AETNA GLOBAL BENEFITS®**

Donna Otten
Head of Aetna Global Benefits
Phone:  44 207 618 6064

September 20, 2010

Yasmine Mathieu, President
Global Risk Intermediary
17200 Chenal Parkway, Bldg 300, Suite 332
Little Rock, Arkansas  72223

Dear Yasmine,

Pursuant to our telephone conversation on September 9 and your follow-up letter to me received the same day, this letter is to clarify our position with respect to the current contracts with Global Risk Intermediary.

We very much appreciate your efforts on behalf of Aetna Global Benefits.  As was communicated in Dana Benbow's conversation with you in May, we have every intention of honoring the existing Broker of Record letter agreement in place with your firm as long as the current reinsurance contracts remain inforce.  However, based on a change in corporate direction around reinsurance, we intend to non-renew the four contracts that expire on December 31, 2010 and we will terminate the other contract as of December 31, 2010 (please see the attached exhibit for specific reference).  Please consider this the official notice required under the existing agreement with GRI.

Sincerely,


Donna Otten
Head of Aetna Global Benefits

Aetna Global Benefits (Europe) Limited
2nd floor  8 Eastcheap  London EC3M 1AE  United Kingdom
T +44 (0) 870 442 2676
F +44 (0) 870 442 4377
E EuropeSales@aetna.com
www.goodhealthworldwide.com

Registered Address: 76 Shoe Lane, London
Registered in England & Wales
Registered No. 04548434
FSA Registered No. 310030

An Aetna Company
Authorised and Regulated by the Financial Services Authority

EXHIBIT
C